May it please the court, William Piper appearing on behalf of the appellant, Jena McClellan. I'll reserve one minute for rebuttal. The issue in this case is quite a narrow one. It's whether or not tender back of consideration received in a severance agreement is required before a lawsuit is filed in a Title VII or Equal Pay Act claim. Now the U.S. Supreme Court has addressed the tender back issue twice. One was in Hogue, which is a Federal Employees Liability Act case. And they came down and said, on the basis of the public policy of the Act, we want people to be able to seek compensation for wrongs. There is a statutory provision in that case, but they came down on the basis of public policy. Similarly, in Oubre, that's how I pronounce it, it may be pronounced some other way, that was an Age Discrimination Employment Act case. And there was another, the Older Workers Benefits Protection Act provision there. But again, similar to Hogue, they came down on the basis of public policy, which was that we want to be able to make sure that people are able to receive compensation for the discrimination that they incurred. And there was a particular focus on the employees, when they receive some sort of compensation through a severance agreement, may already have spent it by the time they're ready to sue. And they may not, as a practical matter, be able to pay the money back before they sue. So, and also in that case... So, are you, just so I understand what you're arguing here, are you arguing that while tender back is a requirement, the employee or whoever should be given a reasonable amount of time after the suit is filed to tender back the amount? Yes, that's my argument. That's in fact what Ms. McClellan attempted to do. And that would be a question of fact? I suppose... I mean, in this case it might not, because she obviously offered. She did, even before they had to file the first response. What is a reasonable amount of time? In other words, if... So there's two ways of looking at tender back, as you know. It's either a prerequisite or it's something that you have to do within a reasonable amount of time. What would be a reasonable amount of time? Well, I think it depends on the case. For example, if someone received $100,000 in a severance agreement, they may not be able to do it within a few weeks, as Ms. McClellan was able to. Her compensation was relatively nominal. It was $4,000. So I think it depends on the case. And that could be discussed with a judge at a Rule 16 conference or something like that. Then what about ratification? Because as you just pointed out, the amount was nominal. So how does economic duress come into play? Are you just saying that economic duress is a question of fact that someone needs to decide whether it existed here? I think that's true. I also think that there shouldn't be a hard and fast rule of tender back before a lawsuit is filed. Right, but tender back and ratification are two separate concepts, right? Right. Okay, so the other argument is, well, she ratified by taking 16 months to sue, in essence. And your response, as I understand it, is she was under duress at the time she signed the contract, and that duress continued to exist because she needed the money. And that seems to be a question of fact, right, whether the duress? I would agree. But I do think that the district judge on the issue of, basically it said it's voidable. And the district judge said, as a result, you have to pay before the lawsuit is filed. I disagree with that. The Oubre opinion, five of the justices said it could be voidable, but you don't have to pay before the lawsuit is filed. Did they say that, or did they not get to the timing question? I don't remember them getting. Where in the opinion did they get to the timing question? I believe, Your Honor, maybe I interpreted the opinion incorrectly, but I believe there were five justices that came down on the issue. Okay, we'll count.  Now, maybe that's just Justice Breyer's opinion, but it's certainly, I read it as the majority opinion. Well, Kennedy's the majority. Breyer just concurred. Correct, but I think he would have been the fifth justice. No, it was Kennedy, Stevens, O'Connor, Souter, Ginsburg, Breyer. Okay. And perhaps I misread that. But, again, our position is, and I think it's consistent with the majority of the courts now, is that tender back should not be required. Of course, the U.S. Supreme Court's never addressed that issue regarding Title VII or the Equal Pay Act. Most of the cases that we've cited in support of the idea that it's not required before a lawsuit is filed deal with Title VII cases. Most of them focus on the issue of it would be, as a practical matter, the plaintiff may not have the money to pay back immediately, so it should not be required as a prerequisite to filing a lawsuit. And I think that's the reasonable position to take as a practical matter. Equal Pay Act's a little bit different. Title VII also has this 90-day right to sue thing, which makes it more acute for plaintiffs under those circumstances because the plaintiff isn't going to know when the right to sue letter is actually issued. And the timing may be totally inappropriate. If you have to sue within 90 days, you may not have any ability to pay the money back within those 90 days. State law is different. You have up to three years. So I think there's a particularly acute reason in Title VII cases for there not to be a prerequisite of tendering back before the lawsuit is filed because of the procedural issues involved in the Title VII case. So anyway, I quoted at length from the Rangel opinion. It's a district court case from New Mexico. And I think the reasoning in that case, as well as other similar cases, the Atwell case is an unpublished opinion from Tennessee and others about the rationale of not requiring tender back as a prerequisite to file. So I would urge the court to follow the reasoning of those cases. The other issue I want to focus on is there wasn't any prejudice, of course, to the defendant in this case. She offered the money back, as applied particularly to this case. Where's the prejudice? So why are we requiring someone to file before a lawsuit is actually filed? And that's a practical issue I think that also should be taken into account. But again, I think more important is the broader view. And sometimes people may not be able to pay the money back. So that is an issue that could be worked out with the courts at a Rule 16 conference or whatever regarding payment schedule. And that's how I would view the situation. A final couple of issues I want to address is the defendant, aptly in this case, urges the court to consider some alternative grounds for affirming. I don't believe those were raised at the district court level and under Rule 56, Federal Rules of Procedure 56. It should have been raised if it's going to be an issue on appeal. They also want to argue, again, the knowing involuntary issue. The court denied summary judgment on that issue. They did not file a cross appeal. So I don't think it's ripe for consideration here either. Unless the court has any other questions, I'm out of time. Okay, thank you. Thank you. Good morning, Your Honors. Good morning. My name is Philip Covnett. I'm counsel for the EEOC as amicus, and I'm here to provide the court with the Commission's view of this tender back rule and its application to this case. I would like to pick up with Judge Thapar's question on what is reasonable and the sort of timing issue. Section 381 of the Restatement of Contracts does set out what is a reasonable time within which to return money such that ratification cannot be, a person cannot be deemed to have ratified a contract if they've returned the money within that period of time. Isn't that mixing up tender back and ratification? In other words, they're two separate concepts. There's a question of whether she ratified by doing nothing in the 16 months, and there's a separate question of whether she tendered back. And it's clear she did tender back. That's undisputed. And the only question on that issue is whether it's a condition precedent filing suit. Correct. And I think the Supreme Court's decision in Oubre characterizes the tender back rule as a subset of the ratification doctrine, not necessarily a completely distinct concept, because the notion behind the tender back rule is that if a person retains the benefit of an agreement beyond the point that they can avoid the agreement, they can be deemed to have ratified the agreement through their conduct. That's the point of the tender back rule. But you could both ratify the agreement during the first 14 months and then tender back on the 15th month, and the tender back would not excuse your ratification. That's true. There are other ways of ratifying that don't involve tender back, but tender back doesn't have any independent meaning other than that it has the significance of ratifying an otherwise voidable agreement. So I hope that addresses your questions on that issue. What about the condition precedent issue? Right. So we certainly think the EEOC's view is that this tender back rule should not apply to Title VII and Equal Pay Act cases at all, and that a set off from any eventual... It's different than Oubre, right? I mean, most of the courts that I understand that have looked at it say it applies because the common law existed. In the Title VII, they never addressed this, unlike in Oubre. That's true. I disagree that most cases, at least since Oubre, have taken that position. I mean, the Richardson v. Sugg decision out of the Eighth Circuit, the Title VII case, they said the tender back rule did not apply. It's not on all fours with this case, I accept, but there is significant reasoning in that decision that says for policy reasons the tender back rule should not apply to Title VII cases. Let's assume it applies for a second. What were you going to say about the timing? Right. So we certainly think that it should not be a condition precedent to a complaint. I mean, that's... How do you figure it out? Is it a reasonable time period after filing? Is it just a reasonable time period generally? I mean, what... So the restatement gives several factors. As Mr. Piper said, it's going to depend on the circumstances, but it really comes down to prejudice to the other side, whether someone retains the money beyond a point that they can speculate with that money at the other person's detriment or it creates these expectations or reliance issues. But here there was absolutely no prejudice because before the defendant even had to respond to the lawsuit... You wouldn't have to decide that, though, right? Because that would just be a remand to the district court. If we agreed with your argument, the district court held it was a condition precedent. Issue a fact, fact finder decides those things. That's true. I mean, we think there's a pure legal question about whether the tenderback rule should apply at all, and if it does, whether it should be a condition precedent. Right. Both of those are legal questions, but then assume we agree with you on both. Then it's just a fact question as to whether it's reasonable under those factors, and that can go back because prejudice isn't something we would decide here because we don't have facts. Right. It would be premature to decide prejudice here. The second question I have is what about ratification? Well, I think... So ratification means that someone intends to accept an agreement that they otherwise could avoid, and they do that through some course of conduct. So accepting payments over time. That could be one way of ratifying an otherwise avoidable agreement, but the issue is that you have to show intent to ratify. The person has to intend to want to accept the agreement, and here there's no reason to believe that Ms. McClellan intended to ratify... Accepting the payments, that is a factor. Now, economic duress is a different issue, but accepting the payments is correct, a factor that you would consider in considering whether she ratified. It would be a factor. So the agreement has to be knowing and voluntary under the common law, and that's this Court's decision, Adams v. Phillips. According to her testimony, which must be credited at this point, she didn't even know what she had waived. She was saying that when she signed this that she thought it was just unemployment, or I'm sorry, certain benefits... She was saying it's an issue of fact, and the district court should have let it go as an issue of fact. Right. I mean, I think a jury could find that she did knowingly waive her rights, but the district court said there's at least a jury question on that, and then... Is it a jury question as an equitable doctrine? It probably is, but I'm just curious. Do you know the answer to that affirmatively? I can't say I prepared for that question. I mean, I think that it makes sense that it would be a jury question because there's a legal standard, and then you have to apply the facts to the legal standard. But I see my time is up. I'm happy to answer any more questions that the Court has. Apparently not. Thank you. Thank you. May it please the Court, Greg Longworth here on behalf of Midwest. I want to jump in and address some of the comments that have been made primarily by Mr. Piper, but by both counsel. The first is that I do agree with the EEOC's point that tender back is a subset, essentially, of ratification. It's one way of ratifying a contract. I disagree with the statement that there has to be an intent to ratify, because under the common law, one ratifies a contract by accepting benefits. This Court, on at least two occasions, have held that that alone ratifies a contract. The capital dredge in Dockwork's case from 1986 cited in our brief in an older case. A second way is by remaining. Do you have any cases along those lines to cite where civil rights claims have been involved or Title VII claims? Yes, specifically on ratification and tender back issues. The answer is yes. From that circuit? No. From this circuit, it has not been addressed. I don't think there's any cases that have addressed Title VII on the tender back issue, other than the Seventh Circuit and the Second Circuit, which have both sided with the position that tender back is required as a precondition of being able to sue. The Fleming case by Judge Posner in 1994, it predated Oubre, and so questions were raised. Although, frankly, Judge Posner, in his opinion, specifically cites the ADEA as being a statute that would create an exception to the rule that he was laying out. But the Seventh Circuit, subsequent to Oubre just four years ago in the Lawson case, held that the very claims that Ms. McClellan has asserted here, Title VII and the EPA, the Equal Pay Act claims, were barred by the failure to tender back. In addition to that, the Second Circuit has specifically addressed the issue as well in the Tung case, which interestingly enough had Title VII and ADEA claims involved in that case. The cases you started out with that you referenced on the circuit, are those commercial cases? From the Sixth Circuit, the capital dredge? Yes. I presume it probably was. I don't recall specifically. But the Tung case is an interesting one because the district court addresses two claims, the ADEA claim and the Title VII claim. And at the district court level, which is before Oubre is decided, the district court does not distinguish between ADEA and Title VII, and says both of them are dismissed under the common law tender back rule. While the case is up on appeal to the Second Circuit, the Supreme Court decides Oubre and says that the ADEA claim cannot be waived by failure to tender back. And in accordance with that, the Second Circuit then says, okay, the ADEA claim survives, but the Title VII claim is gone. The Title VII claim is still subject to that same common law rule because there's no exception. So that's the first point that I'd like to make. The second point that I want to make in response is that the Restatement Section 7 is a key point here. It says that a party has, when there is a voidable contract, and I don't think there's any dispute here that economic duress would at best create a voidable contract, not a void contract, and there's significant difference there. A voidable contract can be ratified. A void contract cannot be ratified. It is void and nothing can be done to resurrect it. Restatement Section 7 talks about voidable contracts, and what it says is when you have a voidable contract, the party who is claiming that there is some problem with it has an election and has two choices in that circumstance. They can either ratify it, or they can elect to try to avoid it. But once you make your decision... The duress has to end. I mean, you can't ratify something until the duress ends, and it's a question of fact as to when the duress ended. Not in this case. In this case, the duress ended the moment she signed the document and walked out the door. She's no longer being forced to do anything. If I'm dependent on the money, I could still be in duress. If I'm in dire straits and I'm getting money, I could be in duress. It's a question of fact, right? Was $400 enough to put her in duress a month, or $400 a payment, whatever it was, $4,000 over the course of time. But a need for money, economic duress is surely sufficient. It is sufficient if there is, in fact, economic duress, which I dispute, and that's one of the alternative arguments. But I don't agree with you, Your Honor, on that point, that the economic duress ended the moment she signed and walked out. She may still be hard up for money, but the duress itself that caused her to sign is gone. If I get unemployed, so I'm making money, I'm putting food on the table, I'm now unemployed, I need that money. If I avoid the contract, I no longer get that money. How is that over? How is the economic duress over? The duress is what caused her to sign the agreement. That's the whole point of economic duress, is that it leads me to do something I didn't want to do, and that doing something is signing the agreement. And it's different than a situation where there's fraud in the factum, general fraud, where somebody may sign an agreement and be unaware that the agreement they signed could be avoided for some reason, specifically because there was some fraud committed in connection with that agreement. So if I disagree with you that economic duress is sufficient, then it would be, let's say that we disagree that economic duress is sufficient, then wouldn't it be a question of fact at that point as to whether this was economic duress as to the ratification principle? Maybe you went on tenderback, I don't know, but as to that principle. I'm not sure I understand your question. If duress can last longer than the signing of the contract, that may be a better way of asking it, I'm sorry, is it then a question of fact as to how long the duress lasted? I still don't think so, and because there are multiple ways that one can ratify, and specifically accepting payments, accepting the benefits under the contract, would be one of those, and clearly she did that. She walks out of that room and for the next eight weeks receives a check, and she cashes each one of them. If she had wanted to challenge those, she should have rejected those checks and said, I've changed my mind, I want to avoid the contract. But the point I want to make out of Restatement Section 7 is that a party has the election, has the choice of whether to ratify and continue on with the contract that's voidable, or to seek to avoid it. But once you make your election, you're set in that election. You can't ratify the contract. In this case, one of the ways it's ratified is by failing to tenderback at the time of filing suit or before filing suit. Do you have any cases for that principle that tenderback is a conditioned precedent to filing suit versus, go ahead. Yes, I think that some of the cases we've cited, I believe Fleming does. But not from our circuit. No. The cases from our circuit that address the questions of tenderback are Sams, Bittinger, and Halverson. And in Sams, the case was whether an ERISA claim required tenderback and whether the failure to tenderback affected a ratification of the contract. And this court held that, in fact, the ERISA claim was ratified. The release of the ERISA claim was ratified by failing to tenderback. In Bittinger, there's multiple claims. There's an ERISA claim and a claim under the Labor Management Relation Act. And in that case, again, the court said that the failure to tenderback resulted in the release being ratified and enforceable to block those claims. The most interesting case from this court is the Halverson opinion in which there were multiple claims. There's an ADA claim, an FMLA claim, an ERISA claim, and an ADEA claim. The first one was a disability claim. So there's all four of those claims. And the court parses out what are we going to do with those four claims with the failure to tenderback. And what the court does is say, because of OOBRE and the specific language of the ADEA, that claim, at least, will be saved. It's not subject to release and ratification by failure to tenderback. But as to the ADA, FMLA, and ERISA claims, those claims are gone. They're blocked. So that's essentially, I think, the case law of this court shows no indication that anything other than an ADEA claim would require any exception to the tenderback rule. Those are published decisions of our court that would be binding precedent? All three are unpublished. Those are unpublished district court cases, aren't they? No, they are circuit court cases. They are cases of the Sixth Circuit. So you offer them really as just persuasive authority, not as any sort of binding authority? That's correct. And they don't specifically address Title VII. None of them address Title VII. The only cases that address Title VII again are the Seventh Circuit cases. But Sam says before or at the same time he commences a proceeding. Correct. And she tendered back at the same time, right after? After I notified her attorney that there was a release and that the claim had been released, it was at that point that the attempted tenderback was made. By that time, the contract has already been ratified. It's been ratified for no other reason if not a timing issue earlier, if not for accepting payments over the course of eight weeks. Even if it wasn't ratified for one of those two reasons, it certainly was ratified when she files the suit, as Sam indicates, without tendering back at the time that she does that. I want to quickly address Oubre and Hoag, the two opinions that opposing counsel rely on. Hoag did not rely on the FELA, the Federal Employers Liability Act, as the basis for his decision. Instead, it relied on common law principles. And what it said is that a contract that is void, not voidable, but void, a contract that is void cannot be ratified by failing to tender back. And the Supreme Court specifically started to discuss the ways in which a contract can be void, and it cited fraud in the execution, as opposed to fraud in the factum. Is there any argument here that it's void versus voidable? No. It's clearly voidable. But what is important from Hoag is that Hoag is a question of a void contract. The court held that the contract was void. That was by mutual mistake, right? Mutual mistake as to the extent of the injury under the FELA. And because it was void, it could not be ratified. So tender back is irrelevant in that case. So that is the whole point that I'm trying to make, that Hoag does not support their position in the least. Because it's simply saying that if the contract's void, and for whatever reason it's void, tender back is not a requirement because it doesn't make any sense. Failing to tender back doesn't create a contract that didn't exist in the first place. So that's my point with Hoag. Oubre, let me address that very quickly. In Oubre, the Supreme Court cites the language from the Act, and by the way, the regulations that have been adopted by the department addressing the ADEA's non-waiver provision specifically says tender back is not required for an ADEA claim. I have a question. Tender back is an equitable doctrine in common law. Or rescission is an equitable doctrine in common law. Tender back relates to it. Why shouldn't it just be a reasonable time period? Well, I think under the common law, there's multiple ways in which a contract is ratified. And only one of those is the reasonable time period. Accepting benefits is a second way. But I'm talking about with regards to when they have to tender back, specifically. Well, but failing to tender back before you sue is an act that has the effect of ratifying. And at that point, you've lost your election to try to come back later and say, wait a second, I want to rethink what I just did. Now I've decided I want to try to avoid. By ratifying, you've lost your right to avoid. I see my time's up. If the court would like to hear the balance of my discussion very briefly, two minutes or one minute on Oubre, I would appreciate that. Why don't you make it 30 seconds? 30 seconds. So in Oubre, what the court says is it relies on that very specific language in the act. And it says specifically that the noncompliant waiver, which it was, has, quote, no effect, end quote. It, quote, is unenforceable, end quote. And that it, quote, may not waive, end quote, the ADEA claim. And my position is that what the Supreme Court is saying is it is effectively void as to the ADEA claim as to any other claim, and they specifically say that as a statutory matter, the release cannot bar her ADEA claim, irrespective, and this is the key language, irrespective of the validity of the contract as to other claims. The Supreme Court expressly was recognizing that other claims would be barred by a release and failure to tender back. If the court has any other questions, I'd be glad to address those. Thank you very much. Thank you. Obviously, I disagree with counsel's interpretation of what Oubre says. It's in our briefs what we believe Oubre says regarding to the tender back issue. The Older Workers Benefits Protection Act speaks to knowing involuntary, not the tender back. The tender back issue is addressed in other parts of the opinion. Halverson and Sam's two opinions cited by counsel were both unpublished, and in both of those cases the plaintiff never tendered back the money, never attempted to, which is obviously much different from this case. Same thing with Fleming. Fleming was a published case from the Seventh Circuit pre-Oubre, but in that case the plaintiff was tenacious in not attempting to tender back the money. There was quite a bit of money. Posner never answered the condition precedent question in that case, correct? Correct. I didn't see it. I'll look again. Okay. So anyway, those cases, to the extent they're relying on it, don't really apply. The majority rule post-Oubre appears to be in accordance with what we've argued, and we've cited the cases in accordance with that. What about the cases, some of the cases that say the court's going to permit the case to go forward, notwithstanding the payment, but that the complaint needs to be amended in connection with the tender back? Yeah, I was aware of those cases. I thought that was a little unusual. I don't know why the complaint would have to be amended. I think this is just a separate issue regarding tender back. I just see that as an unnecessary step. I think the question is more of what is a reasonable time to make the payments under the circumstances, and it would apply. It would depend on the case. I don't think there's a clear answer to what a reasonable time is. It would depend on the case. All right. Okay. Thank you. The case will be submitted, and I'd like to thank you, counsel, for your appearance and argument today. You may call the next case.